J. S55008/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILBERT JOHNSON, | : | No. 1642 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 25, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015449-2013

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:           **FILED OCTOBER 14, 2015**

Wilbert Johnson appeals from the judgment of sentence of August 25, 2014, following his conviction of first-degree murder.[1]  We affirm.

The trial court provided the following facts of this case:

> The evidence presented at trial established that in the late evening hours of September 21, 2013, [appellant] was at the Ragtime Bar in Homestead, where he was waiting to meet the mother of his child, Jalynn Ferrell, to discuss a possible reconciliation in their relationship. [Appellant] knew that Ferrell was seeing someone else, but told her, earlier that day, that if he could not have her, no one would.  Also at the Ragtime Bar that evening were Ferrell's new boyfriend, Edward Joseph and his three (3) friends,

---

\* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

Blaine Smoot, "Sheen"[2] and Qaeed Braxton. [Appellant] became aware that Joseph was Ferrell's new boyfriend, and at one point during the evening, had Joseph call Ferrell and put him on the phone, since Ferrell was not answering [appellant's] calls. At some point thereafter, [appellant] and Braxton had a verbal altercation. Though the altercation did not involve shouting or fighting, the bar's owner nevertheless broke up the discussion between the two men. Braxton and his friends then left the bar, on their way to Ferrell's house to watch a boxing match on television. Surveillance video from the bar shows [appellant] following them at a fast pace. By the time Braxton and his friends reached the end of the block, [appellant] had caught up to them and retrieved a gun from the car he was driving. The car, a grey Volkswagen, belonged to [appellant's] current girlfriend, Karen Clark. Joseph saw [appellant] retrieve the gun and began to run. He heard Braxton say "Aw, come on man" and then a shot was fired. By the time Joseph returned to the scene, [appellant] was gone and Braxton [(hereinafter "victim")] was laying (sic) face-down on the sidewalk. He was transported by paramedics but was later pronounced dead. The cause of death was a single gunshot wound to the back, which perforated his lung.

Trial court opinion, 1/13/15 at 2-3. The Commonwealth charged appellant with criminal homicide, terroristic threats, and a violation of the Uniform Firearms Act.[3] The Commonwealth withdrew the Uniform Firearms Act charge, and the trial court granted appellant's motion for judgment of acquittal on one of the terroristic threats charges. (Notes of testimony, 8/19/14 at 248.) At the conclusion of a jury trial, the jury found appellant

_____

[2] After a review of the record, "Sheen's" identity is unclear.

[3] 18 Pa.C.S.A. §§ 2501, 2706(a)(1), and 6105(a)(1), respectively.

guilty of first-degree murder and acquitted him of the other terroristic threats charge. On August 25, 2014, appellant was sentenced to life imprisonment without the possibility of parole. (Notes of testimony, sentencing hearing, 8/25/14 at 14.) The trial court denied appellant's post-sentence motions on September 9, 2014. Appellant then filed a notice of appeal and the trial court filed an opinion on January 13, 2015.

Appellant raises the following issues for our review:

1. Did the trial court err in denying [appellant's] request to admit certain evidence at trial, specifically, the prior criminal convictions of the [decedent] for the purpose of showing the decedent's propensity for violence and acting as the aggressor?

2. Was the evidence sufficient to demonstrate that [appellant] was acting in self-defense?

3. Was the verdict against the weight of the evidence?

Appellant's brief at 3.

The first issue appellant raises for our review is whether the trial court erred in refusing to admit certain evidence regarding the victim's criminal history as part of appellant's self-defense claim. When claiming self-defense, a defendant is permitted to introduce evidence of the victim's criminal history to either prove that the defendant was in reasonable fear of the victim because the defendant had knowledge of the victim's violent tendencies, or to prove that the victim was acting in conformance with those violent tendencies and was the aggressor in the altercation in question.

*Commonwealth v. Beck*, 402 A.2d 1371, 1373 (Pa. 1979), quoting

*Commonwealth v. Amos*, 284 A.2d 748, 750 (Pa. 1971). The **Beck** court

also stated that a defendant was **not required** to have prior knowledge of

the victim's criminal conviction in order to introduce the conviction into

evidence. **Beck**, 402 A.2d at 1373.

This court further clarified our supreme court's holdings in **Beck** and

**Amos** by stating that,

> [P]rior **convictions** involving aggression by a victim of a homicide may be introduced into evidence by an accused where self-defense is asserted to . . . prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor. . . . [T]he defendant need not have knowledge of a victim's criminal conviction in order to introduce the prior **conviction** to show the aggressive propensities of the victim.

*Commonwealth v. McClain*, 587 A.2d 798, 802 (Pa.Super. 1991)

(emphasis in the original) (citations omitted).

In the instant case, appellant claims that the trial court erred when it

did not admit evidence of the victim's prior convictions into evidence on the

grounds that appellant had no prior knowledge of the victim's criminal record

or previous convictions. Appellant is correct in that the trial court erred

when it denied his motion to introduce evidence of the victim's prior

convictions. However, at no point throughout the record or in his brief does

appellant disclose the crime of which the victim was allegedly convicted.[4]

The only reference in the record to the victim's criminal history came in the

form of an oral motion at the close of the Commonwealth's case-in-chief:

> [Defense counsel]: Just to put on the record one last thing.
>
> The Court: Sure.
>
> [Defense counsel]: The request to admit certain prior convictions of the victim, Mr. Braxton, in this case, as the aggressor in this matter. It's my understanding that the Court is going to make a ruling as to that.
>
> The Court: Yes, I will. Since the Defendant so far as I know did not know of any prior record, I will not allow that to be admitted.

Notes of testimony, 8/19/14 at 252.

This discussion is the extent of any record of prior conviction evidence

and is insufficient for our review. As a result of appellant's failure to disclose

the nature of the victim's conviction, appellant has failed to show that he

was prejudiced by the trial court's error. Therefore, we find that the trial

court's denial of evidence of the victim's prior convictions amounted to

harmless error. The harmless error standard is as follows:

> [The Pennsylvania Supreme Court] has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and

---

[4] We do note that in its opinion, the trial court refers to the victim's prior convictions for simple assault and terroristic threats; however, the trial court also notes, as we do here, that appellant failed to articulate these convictions at any point throughout the trial transcript or his concise statement of errors. (Trial court opinion, 1/13/15 at 8.)

the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If "honest, fair minded jurors might very well have brought in not-guilty verdicts," an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict. We have cautioned that:

> A conclusion that the properly admitted evidence is 'so overwhelming' and the prejudicial effect of the . . . error is 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly.

> Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.

> In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests with the Commonwealth.

*Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa.Super. 2001), quoting *Commonwealth v. Rasheed*, 640 A.2d 896, 898 (Pa. 1994).

As this court articulated in *Drummond*, we do not undertake the finding of harmless error lightly; however, the evidence that appellant acted as the aggressor in this case is overwhelming. After the victim and his friends left the Ragtime Bar, appellant ran after them, went to his car, took

out a gun, and fatally shot the victim in the back as he was running away.[5]

Considering these facts cast in a light favorable to the Commonwealth, the victim did not act as the aggressor, and the failure of the trial court to admit any of the victim's previous convictions was so insignificant that it did not cause appellant any prejudice.

Therefore, we find that the trial court committed harmless error when it denied defense counsel's motion to admit evidence of the victim's prior convictions and did not err when it denied appellant a new trial.

We now address appellant's sufficiency of the evidence claim.

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."
>
> Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

---

[5] Smoot testified that upon realization that appellant had a gun, all four members of their group started running away; this testimony was corroborated by forensic evidence which indicated that the victim was shot in the back. (Notes of testimony, 8/18/14 at 45, 112.)

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa.Super. 2013) (citations

omitted).

> Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa.Super. 2011)

(citations omitted).

The credibility and weight of the evidence are both matters that are in

the sole purview of the jury. Specifically, when considering whether or not

the evidence was sufficient to prove each element of each charge beyond a

reasonable doubt, we cannot assume the task of weighing evidence and

making independent conclusions of fact. ***Commonwealth v. Lewis***, 911

A.2d 558, 563 (Pa.Super. 2006) (citations omitted). "Any doubts regarding

[an appellant's] guilt may be resolved by the fact-finder unless the evidence

is so weak and inconclusive that as a matter of law no probability of fact

may be drawn from the combined circumstances." ***Id.***

When a defendant claims self-defense, the burden is on the

Commonwealth to disprove the defendant's claim beyond a reasonable

doubt. ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012)

(citations omitted). For this reason, we shall review the sufficiency of the

evidence not only for the first-degree murder conviction, but also to

determine whether the Commonwealth met its burden in disproving appellant's self-defense claim.

We shall first review the first-degree murder conviction. After reviewing the evidence presented cast in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence is sufficient to warrant the jury's conviction for first-degree murder. First-degree murder is defined as a criminal homicide that is "committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). The statute defines "intentional killing" as "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d).

In order for an individual to be convicted of first-degree murder, the Commonwealth must prove the following beyond a reasonable doubt: (1) that a human being was unlawfully killed; (2) that the defendant perpetrated the killing; and (3) that the defendant did so with "malice and a specific intent to kill." *Commonwealth v. Johnson*, 107 A.3d 52, 66 (Pa. 2014).

In the instant case, the Commonwealth has met its burden of proving all three elements of first-degree murder beyond a reasonable doubt. First, the Commonwealth proved that the victim was killed unlawfully through the testimony of Kenneth Clark, a forensic pathologist in Allegheny County. Dr. Clark conducted an autopsy on the victim, and determined his death to be caused by a homicide. (Notes of testimony, 8/18/14 at 108, 113.)

Second, for the reasons discussed **supra**, the Commonwealth proved beyond a reasonable doubt that appellant perpetrated the killing. Finally, the Commonwealth also proved beyond a reasonable doubt that appellant not only perpetrated the killing, but did so with the specific intent to kill. Despite the fact that appellant claims self-defense, the forensic evidence indicates that he shot the victim in the back. (**Id.** at 112.) Eyewitness testimony also indicated that when Smoot noticed that appellant was getting a gun out of his car, Smoot, Joseph, "Sheen," and the victim all attempted to run away. (**Id.** at 45.) While not necessary to obtain a first-degree murder conviction,[6] the Commonwealth also established motive with testimony of the argument in the bar between appellant and the victim and the fact that Joseph was dating appellant's ex-girlfriend.

Taking this evidence in the light most favorable to the Commonwealth, as verdict-winner, we find that the Commonwealth has satisfied its burden of proving first-degree murder beyond a reasonable doubt, and that the jury's guilty verdict is fully supported by the evidence, and accordingly cannot be disturbed.

We now turn to appellant's self-defense claim. In order for a defendant to successfully claim self-defense, he or she must meet the following three elements: (1) the defendant reasonably believed that he

---

[6] **See Commonwealth v. Zimmerman**, 504 A.2d 1329, 1335 n. 4 (Pa.Super. 1986) (stating that the Commonwealth need not prove motive in order to obtain a conviction for first-degree murder).

was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. **Commonwealth v. Mouzon**, 53 A.3d 738, 740 (Pa. 2012) (citations omitted). As previously noted, the Commonwealth has the burden of disproving self-defense beyond a reasonable doubt, and may do so by disproving any one of the three self-defense elements the defendant must meet. **Id.** at 740-741.

Here, we only need to address the second factor as discussed in **Mouzon**: whether appellant was at fault in provoking the incident that resulted in the victim's death. We find that the Commonwealth has proven beyond a reasonable doubt that appellant was the aggressor in this case, and therefore his self-defense claim must fail. Appellant claimed that the victim was the initial aggressor after appellant left the Ragtime Bar. (Notes of testimony, 8/19/14 at 229.) The Commonwealth, however, was able to disprove this beyond a reasonable doubt. In addition to Smoot's testimony that appellant chased the victim and his friends down the street from the bar, appellant admitted to the police that he did not see anyone (the victim, Joseph, Smoot, or "Sheen") have any firearms or other types of weapons in their possession. (**Id.**)

For these reasons, we find that the Commonwealth has met its burden of disproving appellant's self-defense claim beyond a reasonable doubt, and that the evidence fully supports the jury's guilty verdict.

Finally, appellant asks us to consider whether the weight of the evidence supports his conviction for first-degree murder. Our standard of review for considering the weight of the evidence is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error in judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

Appellant's weight of the evidence argument is grounded in two separate theories: that the jury gave too much weight to Smoot's eyewitness testimony of the encounter between appellant and the victim outside the Ragtime Bar and that the jury did not give enough weight to Dr. Clark's testimony that the victim had ingested cocaine and alcohol near the time of his encounter with appellant. (Appellant's brief at 14.) In declining to find that the conviction was against the weight of the evidence, the trial court found the verdict reached was not so contrary to the evidence as to shock one's conscience or render the verdict inappropriate. (Trial court opinion, 1/13/15 at 7.) We find no abuse of discretion in such a conclusion and therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015